**UNITED STATES of America, Appellee,**

v.

**Ralph S. GAMBINA, Appellant.**

**No. 77–1353.**

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 10, 1977.

Decided Oct. 26, 1977.

---

David Freeman, Federal Public Defender, Kansas City, Mo., for appellant; David Robards, Asst. Fed. Public Defender, Kansas City, Mo., on brief.

J. Whitfield Moody, Asst. U. S. Atty., Kansas City, Mo., for appellee; Ronald S. Reed, Jr., U. S. Atty., Kansas City, Mo., on brief.

Before LAY, HEANEY and ROSS, Circuit Judges.

HEANEY, Circuit Judge.

Ralph S. Gambina was convicted of attempted escape under 18 U.S.C. § 751(a), using a firearm in his attempted escape under 18 U.S.C. § 924(c)(1), and assaulting a United States Marshal with a dangerous weapon under 18 U.S.C. § 111 after a jury trial.

The case was tried twice; the first trial resulting in a mistrial after the jury failed to reach a verdict. Gambina proceeded pro se at both trials. However, counsel was appointed for Gambina's sentencing, post-trial matters and this appeal.[1]

---

1. Gambina insisted upon representing himself. Nevertheless, the trial court appointed competent counsel for both trials. Counsel was available to answer specific questions and Gambina utilized counsel on several occasions during both trials.

## I

■■■ Gambina initially contends that the security measures utilized at trial were an abuse of the trial court's discretion because they created an "atmosphere of fear" that constituted an "extraneous influence" on the jury. Shortly before both trials, the trial court conducted hearings to determine whether security measures were necessary since Gambina would be moving about the courtroom when representing himself and was expected to call several prisoners as witnesses. The security measures adopted included stationing a large number of nonuniformed deputy marshals at various places inside and outside of the courtroom and limiting the movement of Gambina in the courtroom.

Of course, a defendant is entitled to the physical indicia of innocence, otherwise the legal presumption of innocence may be weakened. *United States v. Jackson,* 549 F.2d 517, 526–527 (8th Cir.), *cert. denied,* 430 U.S. 985, 97 S.Ct. 1682, 52 L.Ed.2d 379 (1977). Although security measures may deprive a defendant of the physical indicia of innocence, generally the need for and extent of security measures during trial are within the discretion of the trial court. *United States v. Jackson, supra; Gregory v. United States,* 365 F.2d 203, 205 (8th Cir. 1966), *cert. denied,* 385 U.S. 1029, 87 S.Ct. 759, 17 L.Ed.2d 676 (1967).

The record indicates that Gambina had a prior conviction for attempted escape; he was involved in another attempted escape; he indicated his intent to escape prior to trial; he would be moving about the courtroom during trial; and several prisoners subpoenaed by Gambina presented similar security risks.

In light of these circumstances, we find that the trial court did not abuse its discretion.

Gambina also argues that the jury should be examined to determine if they were influenced by the security measures. Fed.R. Evid. 606(b) specifically prohibits a juror from impeaching a verdict except in a few narrow circumstances involving extraneous matters or improper influence. *See*

*Government of Virgin Islands v. Gereau,* 523 F.2d 140 (3rd Cir. 1975), *cert. denied,* 424 U.S. 917, 96 S.Ct. 1119, 47 L.Ed.2d 323 (1976). Gambina does not allege that the jury saw or heard anything not set out in the record. Thus, Gambina may not examine the jury because all he attempts to do is examine the mental processes of the jurors. *See United States v. Eagle,* 539 F.2d 1166 (8th Cir. 1976), *cert. denied,* 429 U.S. 1110, 97 S.Ct. 1146, 51 L.Ed.2d 563 (1977).

## II

■■■ Gambina next contends that various defects existed in the jury instructions. Initially, we note that Gambina failed to object to the instructions as required by Fed.R.Crim.P. 30. The rule forecloses one from bringing an assignment of error on appeal unless the defect was "plain error." Fed.R.Crim.P. 52(b). Gambina may not merely rely on his pro se appearance to circumvent these rules. In any event, we find that the instructions were not erroneous.

Gambina contends that the instructions given with respect to Count I, attempted escape, do not require proof that he was in custody when the attempted escape occurred, an essential element of the crime. *United States v. Payne,* 529 F.2d 1353 (8th Cir. 1976). We have reviewed the instructions and find that they indicate a defendant must presently be in the custody of the Attorney General or his authorized representative.

Gambina argues that the instruction given with respect to Count II, using a firearm in his attempted escape, was erroneous because it incorporated the Count I instruction. Since we find that the Count I instruction was not erroneous, neither was the Count II instruction.

■■■ Gambina contends that the instructions given with respect to Counts III and IV, assaulting a United States Marshal with a dangerous weapon, were erroneous because the jury was not instructed that the use of a dangerous weapon must be willful. This contention has no merit as 18 U.S.C. § 111 does not require the use to be willful.

■ Gambina further argues that the trial court should have given a lesser included offense instruction on Counts III and IV as there could be assault without the use of a dangerous weapon. The standards for requiring a lesser included offense instruction are set out in *United States v. Thompson,* 492 F.2d 359 (8th Cir. 1974). Gambina fails to meet these standards. First, he did not request the instruction. More importantly, there was no evidence that would justify a conviction of the lesser offense. Neither party introduced any evidence that the marshals had been assaulted in any way other than by a dangerous weapon.

### III

■ Finally, Gambina contends that statements by the trial court prejudiced his right against self-incrimination. Gambina gives three examples. In the first example, Gambina attempted to testify during the cross-examination of a witness. The trial court cautioned him that to testify, he must be under oath as a witness and could not make any statements until he took the stand. The trial court did not further allude to Gambina's failure to take the stand. We find that this did not constitute a comment to the jury concerning Gambina's failure to take the stand. *See Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965).

■ The second example concerns the instruction on proof of intent. Gambina argues that the trial court erred in instructing the jury that intent must ordinarily be proved by circumstantial evidence because the jury knew Gambina could himself testify about his state of mind.[2] We find no error in this instruction. Moreover, the in-

struction does not contain language suggesting that one intends the natural and probable consequences of his acts. *See United States v. Littlebear,* 531 F.2d 896 (8th Cir. 1976); *United States v. Diggs,* 527 F.2d 509 (8th Cir. 1975).

■ The third and final example occurred during cross-examination of a defense witness. The government inquired into statements made by Gambina at the scene of the attempted escape and later at a hospital. Gambina argues that the testimony suggests he invoked his right against self-incrimination because the statements elicited related only indirectly to the attempted escape. We find no merit in this argument. This is not a situation where a defendant's silence, when given his *Miranda* rights, is used to impeach an alibi subsequently given at trial. Gambina did not testify and he was not silent after his arrest. *See Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976); *United States v. Hale,* 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975).

The judgment of the trial court is affirmed.

---

**2.** The trial court gave the following instruction:
 Intent may be proved by circumstantial evidence. Indeed, it can rarely be established by any other means. We simply cannot look into the head or mind of another person. It is impossible physically to do that. So, while witnesses may see and hear and so be able to give direct evidence of what a defendant does or fails to do, of course, there can be no eyewitness account of the state of mind with which the acts were done or omitted. But what a defendant does or fails to do may indicate intent or lack of intent to commit the particular offense charged.
 You are entitled to consider in that regard, members of the jury, the evidence in the case, all of the testimony and the stipulation. In other words, you may properly consider all the facts and circumstances properly before you which may aid determination of state of mind.