Junior Clay WALKER, Appellant,

v.

Herman S. SOLEM and Mark Meierhenry, Attorney General of the State of South Dakota, Appellees.

No. 81–2452.

United States Court of Appeals, Eighth Circuit.

Submitted June 18, 1982.

Decided Sept. 9, 1982.

Burns, Hagen & Wilka, and Thomas K. Wilka, Sioux Falls, S. D., for appellant.

**1236**

Douglas E. Kludt, Asst. Atty. Gen., Mark V. Meierhenry, Atty. Gen., State of S. D., Pierre, S. D., for appellees.

Before HEANEY and ARNOLD, Circuit Judges, and REGAN,* Senior District Judge.

ARNOLD, Circuit Judge.

Junior Clay Walker appeals from the District Court's [1] order denying his petition for a writ of habeas corpus under 28 U.S.C. § 2254. He claims that he is being held in violation of the Constitution because he was denied the effective assistance of counsel and because there was insufficient evidence to return a guilty verdict. We affirm.

## I.

On September 27, 1976, at approximately 3:00 a. m.. Mr. Walker's home in Hot Springs, South Dakota, was destroyed by a fire resulting from arson. The State of South Dakota charged him with the crime of arson with intent to defraud an insurer in violation of S.D. Codified Laws Ann. § 22–33–1 and § 22–33–4 (1979).[2] The case was tried without a jury, and the state court found him guilty. Subsequently Walker filed a motion for a new trial alleging, primarily, that trial counsel was ineffective; it was denied. The court sentenced Walker to four years in the South Dakota Penitentiary.

Walker appealed his conviction to the South Dakota Supreme Court on June 28, 1978, alleging insufficiency of evidence and ineffective assistance of counsel. The conviction was affirmed. *State v. Walker*, 287 N.W.2d 705 (S.D.1980). Having exhausted his state remedies, he filed a petition for a writ of habeas corpus in federal district court under 28 U.S.C. § 2254. The petition was denied on July 15, 1980, without an evidentiary hearing. Walker then appealed to this Court, his sole allegation being that he was denied effective assistance of counsel. Without expressing an opinion as to the ultimate merits of his claim, we reversed and remanded for an evidentiary hearing. *Walker v. Solem*, 648 F.2d 1188 (8th Cir. 1981). The District Court conducted an evidentiary hearing and again denied Walker's motion for a writ of habeas corpus, finding that Walker had not suffered ineffective assistance of counsel. This appeal followed.

## II.

■ Walker bears a heavy burden in attempting to prove that he was denied effective assistance of counsel. He must show that his attorney failed to exercise the customary skills and diligence that a reasonably competent attorney would exercise under similar circumstances, and that he was prejudiced by that failure. *United States v. Easter*, 539 F.2d 663, 666 (8th Cir. 1976).[3] A similar standard recently articu-

---

* The Hon. John K. Regan, Senior United States District Judge for the Eastern District of Missouri, sitting by designation.

1. The Hon. Andrew W. Bogue, Chief Judge, United States District Court for the District of South Dakota.

2. Section 22–33–1 provides:
   Any person who intentionally sets fire to or burns or causes to be burned any occupied structure, knowing the same to be occupied at the time, is guilty of arson in the first degree.
   Section 22–33–4 states:
   Any person who with intent to injure or defraud an insurer sets fire to or burns or causes to be burned any real or personal property of any kind, whether the property of himself or of another, which property is insured against fire, is guilty of a Class 4 felony.

3. Walker contends that the District Court failed to apply the proper standard for reviewing the effectiveness of counsel, and looked solely to whether counsel's professional judgment was exercised at all, regardless of how far short of acceptable standards counsel might have fallen. We do not believe this to be true. In his memorandum opinion, *Walker v. Solem*, No. 80–5049, slip op. at 1–2 (D.S.D. Oct. 15, 1981), Chief Judge Bogue correctly stated that
   To be successful in alleging ineffective assistance of counsel, Petitioner must:
   [F]irst show that his attorney failed to exercise the customary skills and diligence that a reasonably competent attorney would exercise under similar circumstances. *United States v. Easter*, 539 F.2d 663, 666 (8th Cir. 1976) .... Second, the Petitioner must demonstrate that he was materially prejudiced in the defense of his case by the actions or inactions of his counsel. *Nevels v. Parratt*,

lated requires that a petitioner show that the behavior of counsel fell measurably below that which might be expected from an ordinary fallible lawyer. See *Long v. Brewer*, 667 F.2d 742, 745 (8th Cir. 1982); *United States v. DeCoster*, 624 F.2d 196, 206 (D.C.Cir.1979) (en banc) (plurality opinion). There is a presumption that counsel has rendered effective assistance, and to overcome that presumption Walker must show that counsel failed to perform an essential duty owed him and that that failure prejudiced his defense. *Long v. Brewer, supra*, 667 F.2d at 744.

Walker sets forth a litany of complaints against counsel's representation. Most are wholly without merit and need not be discussed. We do, however, address the following allegations:

1) Counsel's failure to develop Walker's alibi defense adequately.

2) Counsel's failure to call witnesses.

3) Counsel's failure to prepare for trial.

### A. *The Alibi Defense*

Defendant, at trial, contended that he and his wife were at a rest area near Lusk, Wyoming, during the early morning of September 27, 1976, when the fire burned his home; Lusk is approximately 90 miles from Hot Springs. There they met Vernon Casteel, a resident of Washington state. In an unsworn written statement Casteel stated that he met Walker on September 28, 1976. Casteel, however, indicated in a sworn deposition that Walker stayed at the rest area on the night of September 26–27. At the deposition the prosecuting attorney impeached Casteel with the unsworn testimony, and the un-

sworn statement thus became an exhibit to the deposition.

Prior to the evidentiary hearing there was some confusion as to whether defense exhibit # 43 included the Casteel deposition or just the unsworn statement. Arguably, the Casteel deposition established an alibi and was Walker's strongest defense; failure to offer it might have constituted ineffective assistance of counsel. It is now clear, however, that defense exhibit # 43, which was in evidence at the trial, did include the deposition. At the evidentiary hearing Walker's trial counsel testified that he and the prosecutor agreed to introduce both the deposition and the statement into evidence (E.H. 15), the prosecutor stated that the deposition was put into evidence (E.H. 77), and the state trial judge, the Hon. Marshall Young, testified that both the statement and the deposition were part of defense exhibit # 43 (E.H. 148). The District Court's finding that the deposition was admitted into evidence is not clearly erroneous.

There is little merit to Walker's claim that it was counsel's duty to have Casteel testify in court and resolve the discrepancy between his two statements. The deposition was taken because Casteel would not attend the trial. Walker has not realistically suggested, nor do we see, how Casteel could have been forced to attend and testify on his behalf. Even if he had testified in court that he saw Walker on the 27th, the state would have again impeached his testimony and minimized its effect. The case was not tried to a jury, so the disadvantage to defendant of using a deposition instead of a live witness may have been less than usual.

596 F.2d 344 (8th Cir. 1979) [*cert. denied*, 444 U.S. 859 [100 S.Ct. 122, 62 L.Ed.2d 79] (1979)]; *Morrow v. Parratt*, 574 F.2d 411 (8th Cir. 1978); *Rinehart v. Brewer*, [561 F.2d 126 (8th Cir. 1977)].
*United States v. McMillan*, 606 F.2d 245, 247 (8th Cir. 1979).
Cited by the Eighth Circuit Court of Appeals in *United States v. Hach*, 615 F.2d [1203] at 1205 [8th Cir.].
He concluded his opinion by noting that Walker had not shown that his trial attorney "failed to exercise the customary skills and diligence

that a reasonably competent attorney would exercise under similar circumstances." Slip op. at 5, quoting *United States v. Easter, supra*. Judge Bogue's comments during the evidentiary hearing certainly indicate that he knew the correct standard. (Tr. of Evidentiary Hearing 50, 79) (hereinafter referred to as E.H.).
Even if the District Court applied the wrong standard, we would still affirm, because application of the correct standard to this record would still show that counsel was not constitutionally ineffective.

The deposition, moreover, indicates that Casteel did not know whether he saw Walker on September 27th or 28th, and that his in-court testimony would not have resolved the discrepancy between his two statements. On direct examination, while being deposed, Mr. Casteel testified that he saw Walker at the rest stop at around 3 a. m. on September 27, 1976 (Casteel Deposition p. 8). On cross-examination, however, he testified that "it was around the 27th or 28th, somewhere in there. I'm not real definite on the date cause I wasn't paying any attention to the dates much . . . ." (*id.* at 14). His uncertainty became clearer on further examination.

A   . . . I put down at Lusk that I was there the morning of the 28th. Now, whether that was exactly the right date or not, I couldn't say, cause traveling around, you know, you get kind of mixed up in the days.

Q   Okay, [defense counsel], in his questions to you, kept referring to the 27th, but is it your testimony now that it could of been the 26th, the 28th?

A   Well, it could of been, yes, but the only thing I do know that we was in that campground together.

Q   Okay. And you're not sure of the date, then; is that correct?

A   Well, no; not really sure, but—

Q   It could of been the 28th, though; is that right?

A   Well, it might of been, but as far as I know when I got down to Lusk the next morning and got gas I put it down as the 28th. I never asked nobody or nothing about it. I really wasn't interested in the dates any

way, I was just keeping a record on the gas mileage.

*Id.* at 20.

### B. *Failure to Call Witnesses*

■ Walker contends that if Bill Kilbreth and Steve Crawford (two real estate agents) had been called as witnesses they would have testified that Walker had taken substantial steps towards selling his house. This testimony allegedly would have prevented trial-court findings suggesting that Walker had not made any real effort to sell the house and that when he told neighbors that he was "going to get rid of it one way or another," he meant he was ready to burn it.[4]

In fact, however, trial counsel did call witnesses whose testimony showed Walker was attempting to sell the house. Michael and Donna Mosser had been interested in buying it and so testified (Tr. 267–71, 302–04). Moreover, both Mr. and Mrs. Walker testified to their interest in selling the house. Though with hindsight we know that defense counsel did not proffer sufficient evidence to rebut the inculpatory inferences flowing from Walker's statements to his neighbors, this was not at all clear at the time of the trial, and we do not believe that the failure to call Crawford and Kilbreth shows counsel's incompetence.

### C. *Failure to Prepare for Trial*

■ Walker seems to suggest that counsel's alleged failure to interview witnesses personally constituted a breach of his essential duty to investigate. We disagree. Although counsel should ordinarily conduct an in-depth investigation of the case, including an independent interviewing of wit-

---

4. The state trial court made the following findings:

23.

That a couple of days before the fire the Defendant stated to a group of neighbors as follows: "I'm going to get rid of it one way or another," meaning or referring to his dwelling house at 1537 Evanston Street.

24.

Two days prior to the fire, the Defendant told some neighbors that he was selling the house to someone in Rapid City, and he did not want curb and gutters placed on the property. He refused to disclose the buyer's name so that his neighbors could contact the new buyers.

25.

The Defendant testified he listed his property for sale with United Farm Agency in Hot Springs, South Dakota, for $25,500.00 during September, 1976.

26.

The real estate broker for United Farm Agency searched for records and testified there was no such listing for the Defendant's house.

nesses, *Hawkman v. Parratt*, 661 F.2d 1161, 1169 (8th Cir. 1981), there are times when an attorney may reasonably choose to rely on other sources of information, *Plant v. Wyrick*, 636 F.2d 188, 189–90 (8th Cir. 1980). This is such a case. Mr. and Mrs. Walker have taken a very active role throughout the proceedings (E.H. 37–38). Prior to trial they supplied counsel with some tapes of interviews they had had with witnesses and told him what other potential witnesses would say. A preliminary hearing transcript was available, and counsel knew what the prosecution's case would be because of the state's open file policy. Moreover, counsel did personally interview several of the witnesses (E.H. 7–8), including the most important defense witness, Vernon Casteel.

Defendant also claims that counsel's failure to interview witnesses prevented him from adequately examining witnesses at trial. Initially, we note that in addition to having interviewed several of the witnesses months before trial, counsel seems to have interviewed most, though not all, of the witnesses, on the day of the trial. This being the case we do not believe defendant has overcome the presumption that counsel was effective enough to survive constitutional scrutiny. See *United States v. Sheehy*, 670 F.2d 798, 799 (8th Cir. 1982). This conclusion is buttressed by the fact that Walker has failed to show how he was prejudiced by counsel's tardy and perhaps minimal interviewing of some of the witnesses.[5]

Walker alleges that counsel did not read the fire marshal's report and that as a result he couldn't knowledgeably cross-examine and impeach Sylvia Klinesmith, Walker's former wife. The record is clear, however, that counsel did read the report. At the evidentiary hearing Mrs. Walker conceded that she had delivered it to Walker's counsel and discussed it with him.

Q Did you ever give [trial counsel] a copy of the fire marshal's report by Jim Holmes?

A Yes, sir.

Q What time was it that you gave that to him?

A It was in May.

Q 1976—

A We turned all the reports over to him and it was in May of '77.

Q Did you ever have any discussion with [trial counsel] about the fire marshal's report and the testimony he would receive from Mr. Kilbreth?

A Yes, sir, we did.

E.H. 106. Walker's counsel also expressly stated that he had read the report.

Q And prior to the trial you did not read the State Fire Marshal's report, did you?

A I did.

Q You read the Fire Marshal's report before trial?

A Yes. At the first State court hearing I couldn't remember if I had or not, but on further recollection and refreshment of my memory I absolutely had to read it because we stipulated with the State in the case that the fire was started by a flammable substance or something. We stipulated that the fire was started by someone.

E.H. 21.

There is likewise no merit to Walker's contention that counsel did not read the preliminary-hearing transcript.[6] Walker argues that at the evidentiary hearing counsel did not recall that during the preliminary hearing the state had offered to bring Sylvia Klinesmith to Hot Springs for an interview. The evidentiary hearing, however, was held four years after counsel was supposed to have read the 157-page transcript. He may not have recalled the

---

5. Walker does allege that trial counsel was unprepared to rebut Carolyn Layton's damaging testimony. This is not true. He successfully relied on other sources of information to cross-examine and impeach Ms. Layton (Tr. 562; E.H. 105 06).

6. Different counsel have represented Walker at various stages of the proceedings. Norman Blatchford acted as counsel through April 1977 and was present at the preliminary hearing.

contents of the transcript, but that does not mean that he did not read it.

### III.

We briefly address Walker's claim that the evidence at his state trial was insufficient as a matter of law, so as to entitle him to habeas relief under *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). We reject it for two reasons. Walker argued this point neither on his first appeal to this Court nor during the evidentiary hearing. The error has not been preserved for review. In addition, the argument is completely lacking in merit.

The judgment is affirmed.[7]

---

**7.** The Court expresses its gratitude to appointed counsel for his thorough and diligent representation of petitioner.