**Johnny Franklin HARRIS, Appellant,**

v.

**Vernon HOUSEWRIGHT, Director, Arkansas Department of Correction, Appellee.**

No. 82-1075.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 9, 1982.

Decided Dec. 28, 1982.

Rehearing Denied Feb. 4, 1983.

Allan Gates (Court-appointed), Mitchell, Williams & Selig, Little Rock, Ark., for appellant.

Steve Clark, Atty. Gen. by Dennis R. Molock, Deputy Atty. Gen., Little Rock, Ark., for appellee.

Before LAY, Chief Judge, HEANEY, Circuit Judge, and HENLEY, Senior Circuit Judge.

HEANEY, Circuit Judge.

Johnny Franklin Harris appeals from the district court's[1] denial of his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. He contends that he did not receive effective assistance of counsel in a state court jury trial in which he was convicted of aggravated robbery and murder, and sentenced to life imprisonment without parole.[2] Because we find that the performance of Harris's attorneys, when viewed as a whole, did not demonstrate the level of skill customary for reasonably competent practitioners under similar circumstances, and that Harris was prejudiced thereby, we reverse the judgment of the district court.

Harris was convicted for robbing Beulah Collins and for murdering her tenant, Joe Vinson. On August 20, 1976, two men entered the home of Collins in rural Arkansas, stole $200, beat her and Vinson, and bound them to chairs before leaving. The next day, the house caught fire. Beulah Collins escaped the fire when she was discovered by neighbors who came to extinguish the flames. The body of Joe Vinson was found inside the burned house.

On August 24, 1976, Harris was arrested for passing a bad check. At the police station, an officer noticed a gun on the passenger side floor of the truck that Har-

---

1. The Honorable G. Thomas Eisele, Chief Judge of the United States District Court for the Eastern District of Arkansas.

2. The petitioner presented three other arguments on appeal: (1) that the district court erred in denying his request to supplement the evidentiary record; (2) that the evidence was constitutionally insufficient to support the conviction; and (3) that evidence was obtained in violation of the Fourth Amendment. Because we grant the writ on grounds of ineffective assistance of counsel, we need not address these other issues.

ris was driving. After obtaining a search warrant, the officer seized the gun, which matched the description of a gun reported stolen in the robbery of Beulah Collins. On the same day, the police obtained a warrant to search Harris's apartment. While searching the apartment, the police found a pistol in the pocket of Curtis Fryer, Harris's alleged accomplice, who was attempting to flee the apartment. The police subsequently identified the pistol as the one stolen in the robbery of Collins.

The petitioner was charged with the robbery of Beulah Collins and the murder of Joe Vinson. The state court appointed two attorneys to represent the petitioner. At the time of their appointment as defense counsel, one attorney had been admitted to the bar eighteen months; the other had been admitted to the bar less than two weeks.

In a trial lasting two days, Harris was convicted of aggravated robbery and capital murder and sentenced to life imprisonment without parole. On direct appeal, the Arkansas Supreme Court affirmed his conviction. *Harris v. State,* 262 Ark. 506, 558 S.W.2d 143 (1977). He sought post-conviction relief pursuant to Rule 37 of the Arkansas Rules of Criminal Procedure, and the Arkansas Supreme Court, without opinion, denied him permission to proceed under that rule.[3]

Harris filed a petition seeking federal post-conviction relief pursuant to 28 U.S.C. § 2254 in the United States District Court for the Eastern District of Arkansas. Following an evidentiary hearing, the United States Magistrate filed a Recommended Disposition and Findings of Fact denying Harris relief. Thereafter, Harris requested an additional evidentiary hearing before the magistrate.[4] The district court denied the request and adopted without comment the magistrate's opinion.

## I.

## THE RIGHT TO EFFECTIVE COUNSEL.

The Sixth Amendment guarantees every criminal defendant the right to counsel. In *Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), the Supreme Court recognized that the right to counsel is the right to effective counsel. Since *Powell,* the Court has expanded the scope of that right to effective assistance of counsel.[5] Indeed, this right may be a defendant's most fundamental right because it is essential to his or her ability to assert any other right he or she may have. *See United States v. DeCoster,* 487 F.2d 1197, 1201 (D.C.Cir.1973).

To establish ineffective assistance of counsel, the petitioner must show that his or her attorney failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances. *Walker v. Solem,* 687 F.2d 1235, 1236 (8th Cir.1982); *Eldridge v. Atkins,* 665 F.2d 228, 231 (8th Cir.1981), *cert. denied,* 456 U.S. 910, 102 S.Ct. 1760, 72 L.Ed.2d 168 (1982). Additionally, the petitioner must demonstrate that he or she was prejudiced by counsel's ineffectiveness. *Id.*

The level of professional competence among trial counsel generally,[6] and among

---

**3.** In his *pro se* petition in state court, Harris alleged ineffective assistance of counsel as a ground for relief. Thus, the substance of the federal claim was fairly presented to the state court. *See Picard v. Connor,* 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). Because there is no further state remedy available to the petitioner, the exhaustion requirement is satisfied. 28 U.S.C. § 2254(b), (c). *See Knott v. Mabry,* 671 F.2d 1208, 1210 (8th Cir.1982).

**4.** Harris alleges that the evidence at the supplementary hearing would have established additional requests for private payment and would

have demonstrated that the petitioner objected to the appointment of counsel and requested leave to obtain counsel of his choice.

**5.** *See, e.g., Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972); *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

**6.** *See, e.g.,* Burger, *The Special Skills of Advocacy: Are Specialized Training and Certification of Advocates Essential to Our System of Justice?,* 42 Fordham L.Rev. 227 (1973); Maddi, *Trial Advocacy Competence: The Judicial Per-*

the criminal defense bar in particular,[7] is a matter of concern to the bar and the judiciary. In this case, we are faced with a particularly troublesome aspect of that issue: the appointment of young and inexperienced counsel to represent a criminal defendant in a case involving a capital offense —murder. It is difficult to imagine a case which our society should accord greater importance than one in which the potential penalty is death.

Notwithstanding the seriousness of the offense charged here, at the time defense counsel were appointed to represent the petitioner, one attorney had been admitted to the bar eighteen months; the other attorney, less than two weeks. Plainly, the lack of experience of counsel is a factor that may contribute to ineffective representation. Nonetheless, in determining whether there has been effective assistance, the primary focus must be on how well counsel performed in the particular case, not on how much experience counsel has had. *United States ex rel. Williams v. Twomey,* 510 F.2d 634, 639 (7th Cir.), *cert. denied sub nom. Sielaff v. Williams,* 423 U.S. 876, 96 S.Ct. 148, 46 L.Ed.2d 109 (1975); *Alire v. United States,* 365 F.2d 278, 279 (10th Cir. 1966), *cert. denied,* 386 U.S. 984, 87 S.Ct. 1290, 18 L.Ed.2d 233 (1967). Counsel may sometimes compensate for their lack of experience by unusual zeal and industry.[8] Moreover, courts recognize that "law school does not endow the young lawyer with all of the skills, abilities and 'know-how' of the experienced advocate" and that the young attorney "must gain experience somewhere, somehow, and sometime." *Smotherman v. Beto,* 276 F.Supp. 579, 589 (N.D.Tex.1967). Yet, criminal defendants should not be expected to pay the steep price of counsel's education by experience.[9]

■ At bottom, the most serious mistake made by the petitioner's trial counsel may have been in accepting the appointment in the first instance. DR 6–101(A)(1) of the American Bar Association Code of Professional Responsibility provides:

> A lawyer shall not * * * handle a legal matter which he knows or should know that he is not competent to handle, without associating with him a lawyer who is competent to handle it.

A major part of the responsibility for ensuring effective counsel, however, must inhere in the appointment itself. It is the duty of the courts to ensure that effective legal counsel are appointed to represent criminal defendants.[10]

*spective,* Am. Bar Foundation Res.J. 105 (1978); Schwarzer, *Dealing with Incompetent Counsel—The Trial Judge's Role,* 93 Harv.L. Rev. 633 (1980).

7. *See, e.g.,* Bazelon, *The Defective Assistance of Counsel,* 42 U.Cin.L.Rev. 1 (1973); ABA Convention Report, Criminal Justice Section Program on Lawyer Competency, 31 Crim.L. Rep. (BNA) 2469 (1982).

8. *See, e.g., Alire v. United States,* 365 F.2d 278, 279 (10th Cir.1966), *cert. denied,* 386 U.S. 984, 87 S.Ct. 1290, 18 L.Ed.2d 233 (1967); *Achtien v. Dowd,* 117 F.2d 989, 992 (7th Cir.1941). Indeed, in this case, counsel appear to have spent an adequate amount of time preparing the petitioner's case.

9. The American Bar Association has emphasized the importance of assigning experienced counsel to criminal cases:

> The practice of criminal law has become highly specialized in recent years, and only lawyers experienced in trial practice, with an interest in and knowledge of criminal law and procedure, can properly be expected to serve as assigned counsel. While it is imperative that assigned counsel possess advocacy skills so that prompt and wise reactions to the exigencies of a trial may be expected, this alone is not deemed sufficient. There must also be familiarity with the practice and procedure of the criminal courts and knowledge in the art of criminal defense.

American Bar Association, *Standards for Providing Defense Services,* Standard 2.2 (2d ed. 1980).

10. One federal judge has noted that the reluctance of courts to grant relief based on ineffective assistance of counsel may stem from the damaging effect such a ruling will have on the attorney. More properly, he suggests, the indictment should be aimed at the system, not the attorney. Indeed, in this case, the claim might accurately be termed "failure of the criminal process" as Judge Bazelon has suggested. *See* Bazelon, *The Realities of Gideon and Argersinger,* 64 Geo.L.J. 811, 823 (1976).

## II.

## THE INEFFECTIVENESS REQUIREMENT.

### A. *Overview—Cumulative Effect of Errors.*

 Viewed in totality, this case presents a picture of two young attorneys, recently graduated from law school, who were thrust by court appointment into a capital murder jury trial without sufficient experience to deal effectively with the difficult judgments that such a case necessarily entails. We recognize that counsel are presumed to have rendered effective assistance and the petitioner must overcome this presumption to establish his or her ineffective assistance claim. *Eldridge v. Atkins, supra,* 665 F.2d at 231; *Thomas v. Wyrick,* 535 F.2d 407, 413 (8th Cir.), *cert. denied,* 429 U.S. 868, 97 S.Ct. 178, 50 L.Ed.2d 148 (1976). Moreover, the petitioner's burden in overcoming this presumption is a heavy one. *E.g., McQueen v. Swenson,* 498 F.2d 207, 216 (8th Cir.1974). The exercise of reasonable professional judgment, even if later proven unwise, does not constitute ineffective assistance. *Knott v. Mabry,* 671 F.2d 1208, 1212 (8th Cir.1982); *Walker v. Solem,* 648 F.2d 1188 (8th Cir.1981).

 In this case, however, Harris has overcome the presumption of effective assistance. No single error made by the petitioner's appointed counsel is of constitutional dimension. Yet, when viewed cumulatively, the multiple errors revealed in the record, as discussed below, demonstrate that counsel's total performance was below the level of professional skill customary for competent counsel similarly situated. *See Cooper v. Fitzharris,* 586 F.2d 1325, 1333 (9th Cir.1978), *cert. denied,* 440 U.S. 974, 99 S.Ct. 1542, 59 L.Ed.2d 793 (1979).

### B. *Request for Private Payment.*

It is customary in criminal appointments that counsel receive their legal fees solely from the court. In this case, however, the petitioner's appointed defense counsel requested and received a private payment of $500 from petitioner's family for legal fees in connection with defending Harris. The petitioner contends that the request and payment destroyed the attorney-client relationship of trust and confidence which is essential to effective representation. The defense counsel's conduct in requesting private payment was improper. *See generally,* American Bar Association, *Code of Professional Responsibility,* DR 2–106; American Bar Association, *Standards for the Defense Function,* Standard 3.3 (2d ed. 1980). The request for payment does not, however, independently establish ineffective assistance of counsel. The payment does call into question whether counsel were diligent and devoted advocates of the petitioner's case, or whether they were primarily interested in collecting a fee. *Cf. Friedman v. United States,* 588 F.2d 1010, 1016 (5th Cir. 1979).

### C. *Change of Venue Hearing.*

Prior to trial, Harris moved for a change of venue. The defense counsel offered two pieces of evidence in support of the motion: (1) a local newspaper account reporting the murder and displaying a picture of the defendant, and (2) an affidavit of four Monroe County residents who stated that they did not believe that Harris could receive a fair trial in Monroe County. The court advised defense counsel that the affiants would be subject to cross-examination, but the attorneys had not asked any of the affiants to appear in court. The defense counsel presented no witnesses in support of the motion. The state produced seven witnesses in support of their position that the defendant could obtain a fair trial in Monroe County. Unsurprisingly, Harris's motion for a change of venue was denied.

We cannot say that the petitioner would have received a change of venue had defense counsel presented witnesses in support of the motion. The case, however, presented the classic situation for seeking a change of venue: a heinous crime against an elderly couple in a rural community. The crime received considerable local attention. The importance to Harris of a change of venue was such that reasonably compe-

tent attorneys would have obtained witnesses, or otherwise made a more effective case, on behalf of the motion.

### D. *Jury Selection.*

The petitioner contends that his attorneys' failure to challenge or strike jurors who had relationships strongly suggestive of pro-prosecutorial bias constituted ineffective assistance. Several jurors revealed that they had relationships with members of the sheriff's department or the police department, both of which were involved in the investigation of the crime. The sheriff testified at the trial, as did other members of both the sheriff's department and the police department.[11] The petitioner argues that at least the following four jurors should have been stricken or challenged for cause:

(1) Alma Ruth Reynolds on voir dire stated that her brother-in-law, Bobby Dollar, was a member of the sheriff's department and had "worked the case." She also testified that she had not discussed the case with him and that she would consider all of the testimony and would not tend to believe him just because he was a relative or policeman.

(2) Carole Cole Smith was the daughter of Leonard Cole of the Clarendon Police Department, who sat as bailiff at the petitioner's trial. She testified on voir dire that she would consider all the testimony and would not tend to believe what a witness said merely because he was a policeman.

(3) Frank Newby was a member of the sheriff's patrol. On voir dire, he testified as follows:

Q. You are friendly with people in the sheriff's department.

A. I am on the sheriff's patrol. I am a member of the sheriff's patrol.

Q. Some of those people are going to be in there testifying. Larry Morris [the sheriff] may be testifying and probably you will know a bunch of them that are going to be testifying. Are you very

close friends with these people, so close that you won't be able to make a fair judgment and when they say something you can take that in stride and if someone else says something, someone who is not a policeman, that you don't know and they say something completely—will you be able to weigh those people's testimony equally with the people in the sheriff's department?

A. I think so. Like I said, there is a personal relationship there that—it will have a bearing. It won't necessarily uh I don't want it to sound like, you know, that it will have a bearing but like I know some of these people.

Q. All I am asking for—

A. I am going to try to weigh both sides and listen to whatever says.

(4) Dennis Spurlock stated that he knew several people on the sheriff's department. When asked whether he would tend to believe a police officer before he would believe another individual, he replied: "I don't know. That's hard. It might not should be that hard but it is. I would say a badge means something but if there is some room for doubt I think maybe you should distinguish between them."

In related contexts, we have emphasized the danger of a conviction-prone jury when jurors have been associated with or chosen by the sheriff. *See, e.g., Thompson v. White,* 680 F.2d 1173, 1174 (8th Cir.1982); *Henson v. Wyrick,* 634 F.2d 1080, 1082–1083 (8th Cir.1980), *cert. denied,* 450 U.S. 958, 101 S.Ct. 1417, 67 L.Ed.2d 383 (1981). At the evidentiary hearing, one of the defense attorneys testified that he was pleased with the composition of the jury. Although each juror stated that he or she would not be affected by such relationships, we are not persuaded by these responses to leading questions. We are reluctant to second-guess something as subjective as an attorney's jury selection. Nevertheless, the possibility of bias among these jurors was so

---

11. Of the twelve witnesses the state called at trial, six were associated with either the sheriff's department or the police department.

strong that we must conclude that reasonably competent practitioners would have exercised peremptory challenges or challenges for cause with respect to at least some of these jurors.[12]

### E. *Failure to Prepare for Witnesses.*

On several occasions during the short trial, the defense counsel expressed surprise that certain prosecution witnesses were to be called. Repeatedly, the defense either did not know who the witnesses were or about what they were going to testify. On each occasion, the prosecution or the court had to inform Harris's attorneys that the person was listed on the witness list or on the crime-scene search. We have frequently emphasized the importance of interviewing witnesses or otherwise preparing for the testimony of a witness at trial. *See Walker v. Solem, supra,* 687 F.2d at 1238–1239; *Hawkman v. Parratt,* 661 F.2d 1161, 1169 (8th Cir.1981); *Thomas v. Wyrick, supra,* 535 F.2d at 413; *McQueen v. Swenson, supra,* 498 F.2d at 216. Counsel's failure to prepare adequately with respect to certain prosecution witnesses is further evidence that their performance was below the level of reasonably competent attorneys.

### F. *Hearsay Testimony.*

The petitioner alleges that the defense counsel failed to object to prejudicial hearsay testimony at trial. One of the major pieces of evidence linking Harris to the crime was the .22 caliber revolver found in the vehicle he was driving at the time he was arrested. A police officer testified that a deputy sheriff had informed him that he, the deputy, had been told that Collins purchased the gun from a particular sporting goods store.[13] Additionally, the police officer testified that the dealer, as required by law, had kept a record of the sale to Collins. The firearms record was not introduced into evidence. Clearly, the police officer's testimony was inadmissible hearsay and could have been objected to by the defense attorneys.[14] Arkansas Rule of Evidence 802, Ark.Stat.Ann. § 28–1001. We are aware of the pressures facing an attorney in a trial setting and do not expect an errorless trial. Nonetheless, this failure to object is one more example of where the inexperience of the defense counsel was evident.

### G. *Failure to Assert the Falsity of an Essential Statement in the Search Warrant Affidavit.*

Aside from accomplice testimony, the essential evidence against Harris consisted of two guns which were allegedly stolen in the robbery. One of those guns was seized pursuant to a search of the petitioner's apartment. Harris contends that the affidavit supporting the search contained false statements which, when omitted, eliminate the basis for probable cause. His attorneys, however, did not attack the warrant on the basis of the false statement in the affidavit.[15] One statement in the affidavit declared that Harris was arrested and charged with carrying an illegal weapon

---

**12.** The defense counsel did not exhaust their peremptory challenges in the selection of the jury.

**13.** Indeed, during this testimony, the prosecutor laid the groundwork for an objection by the defense counsel by interrupting the police officer and saying, "Excuse me now before we get into hearsay."

**14.** The state argues that although this testimony was admittedly hearsay, it was not prejudicial to the defendant for either of two reasons: First, Beulah Collins also positively identified the gun as one which had been stolen from her. This testimony, however, was not particularly strong. Collins had very poor eyesight and only stated that the gun "looked like" a revolver taken from her in the robbery. Second, the

state argues that had the defense counsel objected, the prosecutor simply would have obtained the dealer's record of firearms sales and introduced it as a business record. Although this might have occurred, we believe that competent defense counsel would have objected, forcing the prosecution to prove its case with admissible evidence.

**15.** Counsel did raise in state court a general objection as to whether the warrant substantially complied with the requirements for issuing such warrants, including probable cause. The Arkansas Supreme Court found that it did meet such requirements. *Harris v. State,* 262 Ark. 506, 558 S.W.2d 143, 144 (1977).

which was stolen from Beulah Collins, when in fact, Harris was arrested on a bad check charge. A passenger in the truck with the petitioner was arrested for possession of the illegal weapon. The magistrate found that this false statement was made with reckless disregard for the truth, but concluded that the affidavit still supported a finding of probable cause. Although we express no view on whether probable cause exists without this statement, we do note that the elimination of this statement casts doubt on the finding of probable cause. The failure of counsel to allege this colorable defense is further evidence of their ineffectiveness although, alone, it would not warrant reversal.

### H. *Medical Examiner's Testimony.*

The petitioner contends that counsel were ineffective because they failed to impeach testimony by the state medical examiner with allegedly conflicting evidence in the autopsy report. The prosecution had theorized that Joe Vinson had died as a result of a beating. The medical examiner testified that although the cause of death could not be determined with certainty, he could have been beaten to death. The autopsy report, however, stated that there was no sign of penetrating trauma, which is normally essential for death to result from a beating.[16] Although trial counsel testified that he was certain he had access to the autopsy report, counsel failed to use the report to impeach the medical examiner's testimony. We can perceive of no tactical reason for this omission. The failure to use this report, which was available to counsel and contradicted an important element of the prosecutor's case, is further evidence of the general ineffectiveness of counsel.

### I. *Burned Remains Testimony.*

There was no dispute that Joe Vinson had died and that his remains had been discov-

ered in the burned house of Beulah Collins. Nevertheless, when the prosecution called a witness who stated that he had seen the remains of what appeared to be a human body in the burned house, the defense counsel embarked on an unusually pointless and prejudicial cross-examination. The defense counsel pressed the witness by asking him whether he was sure it was the remains of a human he saw or whether it could not have been the remains of a dog or an animal of some sort. On redirect examination, the prosecutor picked up on this grisly line of questioning, discussing whether the burned remains were human flesh or dog flesh. Although the defense counsel objected, the court noted that the defense counsel had "opened the door on that * * *." We find no conceivable tactical rationale for the defense counsel opening up this line of questioning. It is impossible to determine what effect this testimony may have had on the jury, but it would be difficult for anyone to forget the gruesome details that were discussed. We do not believe that reasonably competent counsel would have made this serious error in judgment.

### J. *Failure to Request Mistrial.*

The petitioner contends that counsel were ineffective because they failed to request a mistrial after a juror observed the defendant in shackles during a recess. A defendant is entitled to the physical indicia of innocence, otherwise the legal presumption of innocence is weakened. *United States v. Robinson,* 645 F.2d 616, 617 (8th Cir.), *cert. denied,* 454 U.S. 875, 102 S.Ct. 351, 70 L.Ed.2d 182 (1981); *United States v. Gambina,* 564 F.2d 22, 24 (8th Cir.1977). No tactical rationale appears to exist for counsel's failure to request a mistrial.[17]

The defendant, of course, bears the burden of demonstrating prejudice in such a

---

16. At the evidentiary hearing, Dr. Fahmy Malak, state medical examiner at the time of the hearing, testified that he had examined the autopsy report on Joe Vinson, prepared by a previous state medical examiner, and that it contained no information indicating that Vinson had been beaten to death.

17. At the evidentiary hearing before the magistrate, one of Harris's attorneys testified that although he could not recall whether or not he had requested a mistrial, it was his usual practice to do so. Thus, it does not appear that the defense counsel had tactical reasons for failing to request a mistrial.

situation. *United States v. Robinson, supra,* 645 F.2d at 617. It is now too late to assess the prejudice resulting from the juror's observation of Harris in chains. The possibility of prejudice in such a situation, however, is sufficiently strong that competent counsel will generally request that the court grant a mistrial or otherwise take remedial action.

### K. *Failure to Object to Improper Comments by the Prosecutor.*

The petitioner argues that the trial counsel were ineffective in failing to object to improper comments made by the prosecutor in closing argument. First, the petitioner notes that the prosecutor commented on his failure to testify.[18] There can be no doubt that it is improper for the prosecutor to comment upon the defendant's exercise of his Fifth Amendment privilege. *Griffin v. California,* 380 U.S. 609, 614–615, 85 S.Ct. 1229, 1232–33, 14 L.Ed.2d 106 (1965); *Catches v. United States,* 582 F.2d 453, 458 (8th Cir.1978).

Second, the petitioner urges that his counsel should have objected to comments by the prosecutor which expressed a personal opinion as to the defendant's guilt. Throughout the final argument, the prosecutor indicated that he personally believed that Harris was guilty.[19] It is unprofessional conduct for a prosecutor to express such a personal belief. Moreover, a prosecutor's position of public trust and his experience in criminal trials may induce the jury to give unwarranted weight to his personal opinion, which is extraneous and irrelevant to the issue of guilt. *United States v. Singer,* 660 F.2d 1295, 1303–1304 (8th Cir.1981), *cert. denied,* 454 U.S. 1156, 102 S.Ct. 1030, 71 L.Ed.2d 314 (1982). *See* American Bar Association, *Standards Relating to the Prosecution Function,* Standard 5.8(b) (2d ed. 1980).

The failure to object to improper comments may indicate a lack of skill or diligence on the part of counsel. When counsel have a plausible strategic reason for failing to object, however, we are reluctant to second-guess such a tactical decision. *See Adail v. Wyrick,* 671 F.2d 1218, 1220 (8th Cir.1982); *Agee v. Wyrick,* 546 F.2d 1324, 1327 (8th Cir.1976). At the evidentiary hearing before the magistrate, Harris's trial counsel testified that he had not objected to the improper comments because he felt they had made no impression on the jury. The seriously prejudicial nature of the improper comments in the prosecutor's closing argument lead us to believe that competent trial counsel would have objected. We emphasize that this failure to object would not be sufficient, by itself, to constitute ineffective assistance of counsel. But again, it is fur-

---

**18.** The improper comments are as follows:

I told you on voir dire that the Judge would instruct you as to circumstantial evidence which he has just done. I want to read that to you once more. All instructions are equally as important—one is as important as the other. This one, I think, is certainly important to the State because I told you yesterday when we were questioning you as prospective jurors that I did not have an eye witness that I could call. *Of course there were two people that were there but I didn't call them.*

\* \* \* \* \* \*

[T]he defendant has employed the defense of alibi. What was his alibi. No one took the stand and testified where he was at 9:00, 10:00 or 11:00 o'clock on Thursday. No one. [Emphasis added.]

**19.** For example, the prosecutor commented to the jury:

I am commanded by God to love my neighbor and I love John Harris but I don't love what he did and he deserves to be found guilty of capital murder and of aggravated robbery and I believe that with all my heart. It doesn't weigh on my conscience at all to sit up here and tell you this.

Additionally, the prosecutor made the following remarks expressing his personal opinion:

I can't visualize anybody believing that somebody else could have done it. \* \* \* I really don't know if Joe Vinson died on the 19th or the 20th. I really don't know but I have got a theory. I believe this crime was committed, the beating part of it was committed that morning and I personally believe that Joe Vinson died that morning but I don't know for sure. \* \* \* The doctor testified that he could not give us the cause of death and I think we can all understand why. He testified that there wasn't enough there but I fully believe that the man was beat to death. After seeing a picture of Beulah Mae Collins. [sic]

ther evidence of the general ineffectiveness of Harris's attorneys.

### L. *Failure to Request Accomplice Testimony Instruction.*

The petitioner contends that the trial counsel rendered ineffective assistance because they failed to request an accomplice testimony instruction. Under Arkansas law, no felony conviction can be obtained on accomplice testimony unless corroborating evidence links the defendant to the crime. Ark.Stat.Ann. § 43–2116 (1977). Additionally, such an instruction generally indicates that the testimony of an accomplice should be considered with caution. *See, e.g.,* Devitt & Blackmar, *Federal Jury Practice & Instructions,* § 17.06 (2d ed. 1977). The petitioner alleges that such an instruction was crucial in this case because the essence of the state's case rested upon the testimony of two persons who were charged as Harris's accomplices.[20] Although the Arkansas Supreme Court has considered the sufficiency of the evidence corroborating the testimony of the accomplices and has found that it was sufficient, this finding does not determine how a jury would have reacted to the issue in the first instance. *Harris v. State, supra,* 558 S.W.2d at 145. Moreover, we do not believe that the petitioner need establish that he had a conclusive accomplice testimony defense. The unexcused failure of counsel to raise a known defense of potential merit is further evidence that counsel's overall performance was below the customary level of skill of reasonably competent practitioners.

### III.

### THE PREJUDICE REQUIREMENT.

Harris, by presenting the foregoing evidence, satisfied the first element of his ineffective assistance claim; he proved that his attorneys failed to perform with the degree of skill with which reasonably competent counsel would perform under similar circumstances. *See supra.* at 204–206. The second requirement for establishing this constitutional claim is that the habeas petitioner's defense was prejudiced by his or her counsel's ineffectiveness. *E.g., Knott v. Mabry, supra,* 671 F.2d at 1210. In this Circuit, the petitioner generally bears the burden of proving that prejudice. *Id.; Tyler v. Wyrick,* 635 F.2d 752, 754–755 (8th Cir.1980), *cert. denied,* 452 U.S. 942, 101 S.Ct. 3089, 69 L.Ed.2d 958 (1981).

In *McQueen v. Swenson, supra,* 498 F.2d at 207, however, we stated that the burden will shift to the state under certain circumstances. The *McQueen* Court recognized that while the burden to prove prejudice properly rests upon the petitioner when he or she alleges a specific error by the defense counsel, other circumstances may require the government to bear the burden of proof:

> In many instances ineffective assistance of counsel may have had so pervasive an effect on the process of guilt determination that it is impossible to determine accurately the presence or absence of prejudice. In other cases changes in circumstances since the original proceedings beyond petitioners' control, such as the death of a witness who was not called, may make it impossible at the time of the habeas corpus petition to determine prejudice. In such instances a finding of departure from the standard of normal competence requires without more, a new trial.

*Id.* at 219–220, *quoting with approval, United States ex rel. Green v. Rundle,* 434 F.2d 1112 (3d Cir.1970). *Accord Thomas v. Wyrick, supra,* 535 F.2d at 414.

This case presents the type of situation that the *McQueen* Court envisioned would require the government to bear the burden of proving that the petitioner was not prejudiced by his counsel's ineffectiveness. Harris alleges not a single error by his attorneys; rather, he contends that his

---

**20.** At the evidentiary hearing, one of the defense counsel testified that he considered requesting such an instruction but decided not to do so because he believed it would have conflicted with the petitioner's alibi defense. We cannot agree that these two defenses would have been inconsistent.

counsel committed a series of continuing errors of misfeasance and nonfeasance throughout the trial. As discussed above, the record substantiates the petitioner's claim.

We cannot, as the state would have us do, view the individual mistakes committed by the petitioner's attorneys in isolation. The record, viewed as a whole, establishes that the defense counsel's overall performance and the cumulative effect of their multiple errors denied Harris effective assistance. This ineffectiveness so pervaded every aspect of the adversary process in this case that it is impossible to determine accurately the presence or absence of prejudice to Harris. Thus, the burden must shift to the state to prove that the ineffectiveness of Harris's counsel was harmless beyond a reasonable doubt. *Thomas v. Wyrick, supra,* 535 F.2d at 424; *McQueen v. Swenson, supra,* 498 F.2d at 219–220.

The government has not met its burden here. Its case against Johnny Harris was not particularly strong; it rested primarily upon the testimony of two accomplices and upon the identification of two stolen guns, neither of which was found on the petitioner himself. Counsel for Harris, however, made the case easier for the government by committing a series of errors beginning with the jury selection and ending with a failure to object to improper comments by the prosecutor during final argument. In between, the defense attorneys committed other errors, including, *inter alia,* failing to prepare for certain witnesses, failing to impeach or object to damaging testimony, and failing to assert defenses of potential merit that either contradicted or mitigated important elements of the state's case.

The state, in seriatim fashion, addresses each act of ineffective assistance of counsel raised by Harris, and concludes that each cannot sustain the petitioner's constitutional claim. It is clear, however, that if the defense counsel are charged with multiple errors at trial, the government does not establish the absence of prejudice by demonstrating that no single error considered alone significantly impaired the defense—

prejudice may result from the cumulative impact of multiple deficiencies. *Cooper v. Fitzharris, supra,* 586 F.2d at 1333.

Moreover, the requirement that prejudice appear does not mean that relief is available only if Harris would have been acquitted but for his counsel's mistakes. *Id.; Thomas v. Wyrick, supra,* 535 F.2d at 1414. Every defendant, whether guilty or innocent, is entitled to a fair trial, and the effective assistance of counsel is "often a requisite to the very existence of a fair trial." *Argersinger v. Hamlin,* 407 U.S. 25, 31, 92 S.Ct. 2006, 2009, 32 L.Ed.2d 530 (1972); *Cooper v. Fitzharris, supra,* 586 F.2d at 1333.

Accordingly, we cannot say that counsel's ineffectiveness here did not prejudice Harris. Therefore, we reverse the judgment of the district court and remand for a new trial. The writ is hereby granted.

HENLEY, Senior Circuit Judge, dissenting.

Petitioner's capital murder case was tried before an experienced and capable state trial judge. The conviction was affirmed by the Arkansas Supreme Court which concluded that the evidence adduced at trial was sufficient to support the conviction. *Harris v. State,* 262 Ark. 506, 558 S.W.2d 143, 145 (1977). A state post-conviction petition that raised essentially the same basic issues as are raised here was denied.

The majority concedes, *ante,* at 206, that "[n]o single error made by the petitioner's appointed counsel is of constitutional dimension." Yet by a process which appears to me to involve undue reliance on inference, conjecture and the youth of appointed counsel, the majority proceeds to elevate the alleged errors of counsel to a level of constitutional magnitude.

In the totality of the circumstances, including the fact that despite strong evidence of guilt the jury verdict did not call for imposition of the death penalty, I am unwilling to find ineffectiveness of counsel or prejudice of constitutional significance. Accordingly, I respectfully dissent.