Willie Lee GIRTMAN *v.* STATE of Arkansas

CR 84-170                                  684 S.W.2d 806

Supreme Court of Arkansas
Opinion delivered February 18, 1985

14

*James W. Haddock,* for appellant.

*Steve Clark,* Att'y Gen., by: *Velda P. West,* Asst. Att'y Gen., for appellee.

DARRELL HICKMAN, Justice. Late in the afternoon of January 28, 1984, in Crossett, Arkansas, the appellant, Willie Lee Girtman shot Ulysses Jasper four times with a .38 revolver and killed him. Girtman was charged with first degree murder and convicted by a jury. He was sentenced to 60 years imprisonment after the jury found he had two prior convictions.

On appeal Girtman argues his conviction must be set aside for insufficiency of the evidence, the wrongful admission of evidence touching on the character of the deceased, and because it was not shown he had legal counsel when he was previously convicted. We find no merit to any of these arguments.

Essentially Girtman's argument is the jury could not have returned a finding of guilty of first degree murder because it chose to disbelieve his version of the killing. Girtman's defense was justification or self-defense as defined in Ark. Stat. Ann. §41-507 (Repl. 1977).

Girtman's version of the incident was that he and the victim had had problems before, and on the day of the incident they had a fight at the home of Willie Carter where several people had gathered to play cards. Several witnesses

testified that the victim, Jasper, was drunk and, without provocation, started a fight with Girtman. After the fight was well started the bystanders stopped it. Girtman said that Jasper told him the next time they met one of them would "leave here." Girtman took the statement as a death threat. He said he went home and discovered he had left his watch at Carter's and started to return. He took his mother's pistol and en route saw Jasper waiting for him in an alley. According to Girtman, he tried to avoid Jasper by going another way but Jasper ran in front of him and blocked his way. Girtman said Jasper "went for" his pocket and he shot him.

Several witnesses testified and corroborated Girtman's version of what happened at Carter's home. There were no eyewitnesses to the killing.

On appeal we must view the evidence in a light most favorable to the state and if there is substantial evidence to support the jury's verdict we must affirm their finding. *Johnson* v. *State*, 270 Ark. 992, 606 S.W.2d 752 (1980).

There was sufficient evidence for the jury to find Girtman deliberately and premeditatedly killed Jasper. Their previous altercation was over and the parties had withdrawn. Jasper was very intoxicated. His blood alcohol content was .26%. Girtman by his own sworn statement admitted he never saw a weapon. In the pocket of Jasper's trousers was found an unopened pocket knife. That is the only evidence Jasper had any sort of weapon. Girtman shot him four times. According to the evidence from the medical examiner, two shots were undoubtedly to Jasper's face, but two were to his back, when the decedent was apparently in a crouching or falling position. Girtman hid the gun and ran home. As he was running one of the neighbors called out to him, but he kept going, not answering. The jury had the right to resolve the facts after hearing the evidence and to decide whether or not to believe Girtman's account. We do not disturb their findings if they are supported by any substantial evidence. *McLemore* v. *State*, 274 Ark. 527, 626 S.W.2d 364 (1982).

16

Deadly physical force is justified as self-defense only if the use of such force cannot be avoided as by retreating. We have held that a condition precedent to a plea of self-defense is an assault upon the defendant "of such a character that it is with murderous intent, or places the defendant in fear of his life, or great bodily harm. A mere assault is not sufficient to justify the plea of self-defense." *Blaylock* v. *State*, 236 Ark. 924, 370 S.W.2d 615 (1963).

Nor have we found a plea of self-defense justified where the evidence showed the defendant armed himself and went to a bar in anticipation that the decedent would be there and would attack him; or that the defendant provoked an attack upon himself by the decedent with the intention of killing the decedent. *Burton* v. *State*, 254 Ark. 673, 495 S.W.2d 841 (1973). The jury in this case would have been justified in finding that Girtman took the gun and left his home with the intention of killing Jasper.

Even if Jasper were the original aggressor, once he withdrew from the encounter and the danger to Girtman was no longer "immediate, urgent and pressing," Girtman was not justified in pursuing him to continue the fight. *Thomas* v. *State*, 266 Ark. 162, 583 S.W.2d 32 (1979).

The appellant also argues that evidence was wrongfully admitted concerning the character of the deceased. The defense was allowed to place before the jury the deceased's reputation for violence, not only generally but by specific acts. During the examination by the state of one of their witnesses, the witness said:

And the conversation he is at my daughter's house, he was talking and, ah, he was talking to me about going to church and, ah, he said all he know of me that I had gone to church all my life. He was gonna go to church with me and I told him why don't you come on and go today and he said I'm is going. And then he went on to tell me that he had somthing to happen to him in the army and wondered would he get forgived for that. I told him under conditions that you was obeying orders that I believed the Lord would forgive you.

It is argued this remark was so prejudicial as to deny the appellant a fair trial. Specifically it is argued this was evidence of specific acts of good conduct which are inadmissible under Unif. R. Evid. 405 (b) since it was not an essential element of appellant's claim of self-defense. *See, West* v. *State,* 265 Ark. 52, 576 S.W.2d 718 (1979).

Actually the defense was not careful in its presentation of character evidence of the deceased. According to Unif. R. Evid. 405 that evidence should have consisted of *reputation* in the community, not specific acts. *Jones* v. *State,* 1 Ark. App. 318, 615 S.W.2d 388 (1981). Four witnesses, including Girtman, testified about the deceased's reputation or propensity for violence, especially when he had been drinking. Most mentioned specific instances. The statement complained of is hardly the sort that could deny Girtman a fair trial. "One who opens up a line of questioning or is responsible for error should not be heard to complain of that for which he was responsible." *Berry* v. *State,* 278 Ark. 578, 647 S.W.2d 453 (1983). So we find this harmless error at best.

Girtman's last argument can be answered by merely reciting what the records showed about counsel for the two prior convictions.

The first conviction was for burglary, grand larceny and possession of stolen property on March 18, 1975, case number 75-99 and it reads:

Mr. Switzer previously appointed to represent Dft. Court again explains his rights to trial by Jury & Counsel. Pleads guilty. Sentenced to five (5) years in State Penentary [sic]. Same to run concurrently with sentence in case No. CR 76-29 Mr. Switzer granted fee of $50.00 for his services.

The second conviction is for theft of property on March 18, 1976, case number 76-29 and it reads:

Dft. arraigned in presence of court appointed counsel. Declines trial & Counsel, Sentenced to (5) years in State

Penrtentary [sic] same to run Concurrently with sentence in CR NO. 75-99.

The state proved Girtman had counsel or waived it regarding these convictions.

Affirmed.