**Donald FINK, Appellant,**

v.

**A.L. LOCKHART, Director, Arkansas Department of Correction, Appellee.**

**No. 86–2468.**

United States Court of Appeals, Eighth Circuit.

Submitted May 22, 1987.

Decided July 6, 1987.

M. Stephen Bingham, Little Rock, Ark., for appellant.

Theodore Holder, Asst. Atty. Gen., Little Rock, Ark., for appellee.

Before HEANEY, FAGG and BOWMAN, Circuit Judges.

BOWMAN, Circuit Judge.

Donald Fink, an Arkansas prisoner, appeals from the District Court's dismissal of his 28 U.S.C. § 2254 petition for a writ of habeas corpus. His petition alleged ineffective assistance of counsel, citing a number of instances in which he claimed his trial counsel was ineffective. A magistrate conducted an evidentiary hearing on Fink's claim and submitted proposed findings and a recommendation to deny the petition. The District Court adopted the magistrate's report and recommendation in its entirety and denied the petition because no prejudice had been shown. For reversal, Fink argues that his trial counsel's errors were so pervasive and his representation so inadequate that prejudice should be presumed. We affirm.

Fink was convicted in 1978 of raping his two minor children. He received a life

sentence. His conviction was affirmed by the Arkansas Supreme Court. During the pendency of his direct appeal, his trial counsel died, and another attorney was appointed to represent him. Fink filed for post-conviction relief under Rule 37 of the Arkansas Rules of Criminal Procedure; relief was denied and the denial was affirmed by the Arkansas Supreme Court. He has exhausted his state remedies.

At trial Fink's two children, ages eleven and thirteen, testified about sexual acts Fink had forced them to perform. Their mother also testified, although she admitted she never had seen Fink do anything improper to the children. A doctor who had examined the children testified that their physical condition was consistent with their testimony, and that it indicated repeated acts of sexual abuse rather than a single incident. There was no evidence to contradict the prosecution's case. Fink did not testify. The trial transcript includes the in-chambers conference at which Fink alleges he was "coerced" into not taking the stand in his own behalf. The transcript shows that the judge repeatedly tried to make him understand that if he testified he would be subject to cross-examination by the prosecutor. Fink continued to insist that he wanted to testify until the prosecutor said that the state would try to impeach him with a confession he had made to the sheriff. (Fink apparently first denied that he had raped his children, then admitted it, then denied it again.) There was some discussion between the attorneys and Fink about this, at the conclusion of which Fink said he did not want to take the stand. At this point, Fink said he had a witness to call. His attorney said he never had heard of the witness, but he was located and testified briefly that he knew Fink, had visited his house, and that the family appeared to be happy. This was the only evidence for Fink.

Fink alleged the following errors by his trial counsel: (1) failure to interview any witnesses prior to trial (Fink claims this omission was particularly damaging when his counsel elicited adverse testimony on cross-examination of one of the children.); (2) failure to conduct voir dire examination of the jury panel; (3) failure to make an opening statement; (4) failure to invoke the witness sequestration rule (a result of which was that the children heard each other's testimony, as well as the testimony of their mother); (5) failure to object on several occasions to questionable and prejudicial testimony; (6) failure to move for a directed verdict, both at the conclusion of the state's case and at the close of all the evidence; (7) allowing the prosecutor to badger, coerce, and confuse Fink in an in-chambers conference that resulted in his declining to testify in his own behalf even though he earlier had indicated a desire to do so; and (8) failure to object to "highly prejudicial" statements by the prosecutor during closing argument. Fink does not argue that any of these errors alone would be enough to show that his counsel was ineffective, but asserts that cumulatively they amount to ineffective assistance.

■ In order to succeed on an ineffective assistance of counsel claim, a defendant must show that (1) his counsel's representation fell below an objective standard of reasonableness and was outside the wide range of professionally competent assistance and (2) there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Kimmelman v. Morrison,* 477 U.S. 365, 106 S.Ct. 2574, 2583 91 L.Ed.2d 305 (1986); *see also Strickland v. Washington,* 466 U.S. 668, 687–90, 104 S.Ct. 2052, 2064–66, 80 L.Ed.2d 674 (1984). The defendant has the burden of showing that he was prejudiced. *Strickland,* 466 U.S. at 696, 104 S.Ct. at 2069.

Fink relies on two arguments to support his contention that he need not prove actual prejudice in this case. First, he cites a pre-*Strickland* Eighth Circuit case, *Harris v. Housewright,* 697 F.2d 202 (8th Cir.1982), in which this Court accepted the view that in certain circumstances the burden shifts to the government to prove that the defendant was not prejudiced. *Id.* at 211 (citing *McQueen v. Swenson,* 498 F.2d 207, 219–20 (8th Cir.1974)). Counsel in the *Harris* case had made numerous errors,

and this Court observed that his ineffectiveness "so pervaded every aspect of the adversary process in this ·case that it is impossible to determine accurately the presence or absence of prejudice." *Id.* at 212. There appears to be no post-*Strickland* case that follows this burden-shifting rule, and in light of *Strickland* we believe that the *Harris* rule no longer represents the law of this Circuit.

Fink's second argument is that the Supreme Court has held that in certain contexts and circumstances prejudice to the defendant is so likely that no specific showing of actual prejudice is required. In *Strickland,* 466 U.S. at 692, 104 S.Ct. at 2067, and *United States v. Cronic,* 466 U.S. 648, 659 & n. 25, 104 S.Ct. 2039, 2047 & n. 25, 80 L.Ed.2d 657 (1984), the Supreme Court noted a few cases in which the presumption of prejudice would apply. However, the courts of appeals have interpreted this exception to the prejudice requirement very narrowly and rarely have found a situation that justifies application of the presumption of prejudice. *See, e.g., Martin v. McCotter,* 796 F.2d 813, 820 (5th Cir.1986), *cert. denied,* — U.S. —, 107 S.Ct. 935, 93 L.Ed.2d 985 (1987); *United States v. Sanchez,* 790 F.2d 245, 254 (2d Cir.), *cert. denied,* — U.S. —, 107 S.Ct. 584, 93 L.Ed.2d 587 (1986); *Griffin v. Aiken,* 775 F.2d 1226, 1229–30 (4th Cir. 1985), *cert. denied,* — U.S. —, 106 S.Ct. 3301, 92 L.Ed.2d 715 (1986); *Schaeffer v. Black,* 774 F.2d 865, 867 (8th Cir.1985) (per curiam); *Warner v. Ford,* 752 F.2d 622, 624–25 (11th Cir.1985); *Chadwick v. Green,* 740 F.2d 897, 900–01 (11th Cir. 1984); *see also Kimmelman,* 106 S.Ct. at 2586 n. 6. *But see Martin v. Rose,* 744 F.2d 1245, 1250–51 (6th Cir.1984) (prejudice presumed when counsel did not participate in trial at all).

The *Sanchez* and *Warner* cases both involved attorneys who did very little at trial, although those cases differ from this case in that there were co-defendants whose attorneys were active. Warner made many of the same complaints about his lawyer that Fink does in this case: counsel conducted no voir dire of the jurors, made no opening statement, and did not object to any of the prosecution's evidence. *Warner,* 752 F.2d at 623. Furthermore, unlike Fink's counsel, Warner's counsel did not cross-examine the state's witnesses, present character evidence for his client, or make a closing argument. *Id.* He testified that in light of his client's prior record and the overwhelming evidence against him, he thought it best to "maintain a low profile" before the jury. *Id.* at 625. The *Warner* court noted that silence can be a legitimate and effective trial strategy, and whether it is "so defective as to negate the need for a showing of prejudice to establish ineffective assistance of counsel must be judged on a case-by-case basis." *Id.* In Warner's case, the court found the presumption of prejudice not justified.

■ Because Fink's trial counsel died before any of the post-conviction proceedings, we never will know whether his omissions were a part of a deliberate trial strategy. He certainly was not aggressive in Fink's defense, but he was far from passive: he used all his peremptory challenges of jurors, he cross-examined the state's witnesses, and he made a closing argument. We therefore cannot say that his representation "entirely fail[ed] to subject the prosecution's case to meaningful adversarial testing," *Cronic,* 466 U.S. at 659, 104 S.Ct. at 2047, so as to trigger a presumption of prejudice.

■ Fink has focused his argument on the presumption of prejudice and has not directly attempted to show prejudice as required by *Strickland.* Based on the record and on Fink's own testimony at the evidentiary hearing below, we are satisfied that there is no reasonable probability that the result of his trial would have been different if counsel had conducted a better defense. There was much evidence against Fink and virtually none in his favor. Even if he had testified in his own behalf and had denied committing the acts of which his children accused him, it is highly unlikely that he would have convinced the jury. When asked by the magistrate what he would have said if he had taken the stand, he responded in a rather rambling fashion

that his wife was a liar, that she lied about signing the papers charging him, and that when he was in jail she took half the proceeds of a check belonging to him and tried to get him to sign their land over to her. When asked why his children would testify that he had raped them, Fink said only that they were "mama's babies," not "daddy's babies." We conclude that Fink has failed to establish that his counsel's representation resulted in prejudice in the constitutional sense as required by *Strickland*.[1] We therefore affirm the District Court's denial of the petition for a writ of habeas corpus.

AFFIRMED.

---

1. Because our holding that Fink failed to show actual prejudice is dispositive of his claim, we need not decide whether his trial counsel's representation was in fact unreasonably deficient. *See Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069.