**Willie Lee GIRTMAN, Appellant,**

v.

**A.L. LOCKHART, Director, Arkansas Department of Correction, Appellee.**

**No. 89–1559.**

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 10, 1990.

Decided Aug. 8, 1991.

Marion Burton, Little Rock, Ark., for appellant.

Clint Miller, Asst. Atty. Gen., Little Rock, Ark., for appellee.

Before McMILLIAN, Circuit Judge, ROSS, Senior Circuit Judge, and STUART,* Senior District Judge.

McMILLIAN, Circuit Judge.

Willie Lee Girtman appeals a final judgment of the United States District Court for the Eastern District of Arkansas denying his petition for a writ of habeas corpus under 28 U.S.C. § 2254 (1988). *Girtman v. Lockhart,* Case No. PB–C–86–361 (E.D.Ark. March 3, 1989) (order) (*Girtman*). For reversal, Girtman argues that the district court erroneously denied his claims of ineffective assistance of counsel and his claim that he should not have been sentenced under the Arkansas habitual offender statute. For the reasons stated below, we affirm the district court's judgment as to Girtman's conviction, and reverse the judgment as to his sentence. We accordingly remand this case to the district court for proceedings consistent with this opinion.

### I.

On January 28, 1984, Girtman shot Ulysses Jasper four times and killed him. The state alleged that after an altercation at the house of a third person, Girtman "deliberately and premeditatedly killed Jasper." *Girtman v. State,* 285 Ark. 13, 15, 684 S.W.2d 806, 807 (1985) (affirming conviction on appeal) (*Girtman*). In support of this view, the state noted that at the time of Jasper's death:

[the] altercation was over and the parties had withdrawn. Jasper was very intoxicated. His blood alcohol content was .26%. Girtman by his own sworn statement admitted he never saw a weapon. In the pocket of Jasper's trousers was found an unopened ordinary pocket knife. That is the only evidence Jasper had any sort of weapon. Girtman shot him four times. According to the evidence from the medical examiner, two shots were undoubtedly to Jasper's face, but two were to his back, when the decedent was apparently in a crouching or falling position. Girtman hid the gun and ran home. As he was running one of the neighbors called out to him, but he kept going, not answering.

*Id.* The jury accepted the state's version of the facts and convicted Girtman of first-degree murder. After the judge found Girtman to be a habitual offender, the jury sentenced him to 60 years' imprisonment.

By contrast, Girtman claimed that he shot Jasper in self-defense. In support of this view, he alleged that:

he and the victim had had problems before, and on the day of the incident they had a fight at the home of Willie Carter where several people had gathered to play cards. Several witnesses testified that the victim, Jasper, was drunk and, without provocation, started a fight with Girtman. After the fight was well started the bystanders stopped it. Girtman said that Jasper told him the next time they met one of them would "leave here." Girtman took the statement as a death threat. He said he went home and discovered he had left his watch at Carter's and started to return. He took his mother's pistol and en route saw Jasper waiting for him in an alley. According to Girtman, he tried to avoid Jasper by going another way but Jasper ran in front of him and blocked his way. Girtman said Jasper "went for" his pocket and he shot him.

*Girtman,* 285 Ark. at 14–15, 684 S.W.2d at 807. Girtman's version of the events at Carter's home was corroborated by several witnesses, but there were no eyewitnesses to Jasper's death.

* The Honorable William C. Stuart, Senior United States District Judge for the Southern District of Iowa, sitting by designation.

Girtman's conviction was affirmed on appeal, and his petition for post-conviction relief was denied. *Girtman v. State*, No. CR 84–170, slip op., 1985 WL 9546 (Ark. June 24, 1985) (unpublished order denying post-conviction relief).

Girtman then filed the present habeas petition in federal court. After holding an evidentiary hearing, the magistrate judge recommended that Girtman's petition be denied. *See Girtman v. Lockhart*, No. PB–C–86–361, slip op. (E.D.Ark. Nov. 11, 1988) (report and recommendations) ("Recommendations"). The district court adopted the magistrate judge's report and recommendations, and this appeal followed. Girtman's claims fell into two categories: those attacking his trial (all of which allege ineffective assistance of counsel) and those attacking his sentence (which allege both ineffective assistance of counsel and erroneous application of the Arkansas habitual offender statute).

## II.

As to his trial, Girtman argues that his defense attorney was ineffective, because he (1) agreed to examine prospective jurors in the trial judge's chambers without consulting Girtman, (2) failed to adequately develop evidence regarding Jasper's reputation for violence, (3) failed to present evidence that Jasper was sufficiently sober to be dangerous at the time of his death, (4) failed to investigate whether Jasper was holding his knife at the time of his death, (5) failed to investigate the range at which Jasper was shot, and (6) failed to object to the prosecutor's misstatement of the law regarding self-defense. In addition, Girtman also contends that the cumulative impact of these errors requires this court to overturn his conviction. Each of these arguments will be addressed in turn.

## A.

At trial, the defense attorney and the prosecutor agreed that prospective jurors would be questioned three at a time in chambers, instead of being questioned in open court. The defense attorney later explained that "he always attempts to close the *voir dire* because he does not want the entire panel to be tainted by what is said [by one prospective juror], particularly in 'out of county' cases such as this one, where he does not know any of the people." *Recommendations* at 4–5. Girtman alleges that he was not consulted about this decision. Girtman claimed that the closed *voir dire* violated his right to a public trial and that he did not waive this right. The district court rejected Girtman's claim, holding that the defense attorney's decision was "a matter of trial strategy," *id.* at 5, and did not prejudice Girtman.

On appeal, Girtman argues that his defense attorney's failure to protect his right to a public trial, or to consult him before waiving this right, constituted ineffective assistance of counsel. Indeed, the Arkansas Supreme Court has held that trial courts lack "authority to prohibit the public and press from the voir dire examination," *Commercial Printing Co. v. Lee*, 262 Ark. 87, 93, 553 S.W.2d 270, 273 (1977) (*Lee*). Moreover, it has been held that a trial court's violation of *Lee* may be reversible error. *See Taylor v. State*, 679 S.W.2d 797, 798, 284 Ark. 103, 104 (1984) (*Taylor*), citing *Sirratt v. State*, 240 Ark. 47, 398 S.W.2d 63 (1966). *See also Press–Enterprise Co. v. Superior Court of Cal.*, 464 U.S. 501, 510, 104 S.Ct. 819, 824, 78 L.Ed.2d 629 (1984) (establishing constitutional "presumption of openness" for *voir dire*, which is rebuttable only if closure "essential to preserve higher values and is narrowly tailored to serve that interest.").

Undoubtedly, Girtman's attorney should have consulted Girtman before waiving his right to a public trial. However, we fail to see how Girtman's defense was impaired by the closed *voir dire*. We therefore find that the defense attorney's closure of *voir dire* was not prejudicial to Girtman's defense, and that the attorney's error did not constitute ineffective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 692, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674 (1984) (counsel ineffective only if his or her errors "prejudicial to the defense").

### B.

█ Girtman next argues that at trial, "the reputation of Ulysses Jasper for violence and drunkenness was insufficiently and improperly presented." Recommendations at 5. Girtman bases this claim on the Arkansas Supreme Court's statement that "the defense was not careful in its presentation of character evidence of the deceased." *Girtman*, 285 Ark. at 17, 684 S.W.2d at 808.

The magistrate judge explained, however, that Girtman had taken the state court's statement out of context. In his state appeal, Girtman argued that the trial court erroneously admitted testimony concerning Jasper's specific acts of good conduct, because evidence of such "specific good acts" was inadmissible under Unif. R.Evid. 405. In response, the state court noted that the defense attorney was allowed to present evidence of Jasper's "reputation for violence, not only generally but by specific acts." *Girtman*, 285 Ark. at 16, 684 S.W.2d at 808. Thus, the defense attorney's introduction of "specific bad acts" evidence "opened the door" to the prosecution's "specific good acts" evidence. In the course of this discussion, the state court described the defense attorney's introduction of "specific acts" evidence as "not careful," *id.* at 17, 684 S.W.2d at 808. After reviewing the state court's opinion, the magistrate judge denied Girtman's claim because "[t]he point of the statement by the court ... was that the defense had been allowed to present more than was allowed under the Rules of Evidence, and that petitioner could not complain when the prosecution presented the same type of evidence." Recommendations at 6, *citing Britt v. State*, 7 Ark.App. 156, 645 S.W.2d 699 (1983).

On appeal, Girtman states that the magistrate judge's recommendations "are not responsive to our contention that the rules of evidence should be well known to trial counsel, and the manner in which the evidence with respect to reputation in the community was presented was a demonstration of trial counsel's failure to properly prepare for trial." Brief for Appellant at 21.

We disagree. The Arkansas Supreme Court criticized the defense attorney for introducing too much character evidence, rather than for failing to introduce enough character evidence. It logically follows that the attorney's error did not prejudice Girtman's case.

### C.

█ At trial, Dr. Fahmy Malak, the state medical examiner, testified that at the time of his death, Jasper was thoroughly intoxicated and had a 0.26% blood alcohol level. Malak further testified that a person with Jasper's blood alcohol level would be "defenseless." Girtman's defense attorney did not interview Malak before trial, anticipate Malak's testimony, or consider employing an expert to criticize Malak's testimony. In his habeas petition, Girtman argued that his defense attorney should have interviewed Malak before trial, and should have brought in his own expert. Girtman further argued that because alcoholics (such as Japser) have abnormal levels of liquor tolerance and therefore would not be defenseless with a 0.26% blood alcohol level, the defense attorney's misconduct prejudiced his case. In support of the latter conclusion, Girtman relied on the testimony of Dr. Lee Beamer, a forensic pathologist who testified before the magistrate judge. The magistrate judge agreed that the defense attorney's "cross-examination of Dr. Malak was confusing." Recommendations at 9. The magistrate judge nevertheless found that Girtman was not prejudiced by his defense attorney's negligence because (1) the attorney established in his cross-examination of Dr. Malak that Jasper was capable of walking, driving and killing at the time of the shooting, and (2) the attorney established Jasper's "hostility and aggressiveness just prior to the shooting." *Id.*

On appeal, Girtman reiterates his contention that Jasper was not defenseless, and claims that his defense attorney's investigation was wholly inadequate. We concede that Dr. Malak's conclusions were

questionable, and that the defense attorney's investigation was inadequate. However, we decline to hold that Girtman was prejudiced by his attorney's errors.

Girtman claims that Dr. Malak's testimony was prejudicial because it is unreasonable to assume that "a jury of laymen would discount Dr. Malak's statement that Jasper was defenseless and only give credibility to that part of his testimony which had some validity." Brief for Appellant at 25. In support of this contention, Girtman notes that his defense attorney was surprised at the verdict and that even the magistrate judge described the defense attorney's cross-examination of Malak as "disorganized and confused." Recommendations at 9. *See Mason v. State*, 289 Ark. 299, 304, 712 S.W.2d 275, 278 (1986) (finding ineffective assistance where "[c]ounsel's examination of witnesses was confusing and ineffectual.").

At trial, the following exchange occurred between Girtman's attorney and Dr. Malak:

Q. And [Jasper] could try to kill somebody?

A. Anything is possible.

Q. Was it anymore unlikely that he would go out here and drive his vehicle like you said point twenty six or that he could go out and kill somebody?

A. It is possible.

Trial Transcript at 207–08. Based on Dr. Malak's testimony on cross-examination, we conclude that the defense attorney produced evidence that Jasper was not defenseless at the time of his death, and that the attorney's failure to produce additional evidence on this point (such as the testimony of an independent expert) was not prejudicial. We accordingly hold that the defense attorney's failure to adequately investigate Jasper's condition was not ineffective assistance of counsel.

### D.

■ Girtman also argues that his attorney was constitutionally ineffective because he failed to introduce Jasper's knife into evidence. The magistrate judge held that Girtman was not prejudiced by his attorney's failure to obtain the knife, for

two reasons. First, Dr. Malak admitted that Jasper had a knife in his pocket at the time of his death, thus rendering any additional testimony on the issue unnecessary. Second, under Arkansas law Girtman was not required to show that Jasper actually possessed a knife in order to prove that he was acting in self-defense. Instead, Girtman was required to prove only that he reasonably believed that Jasper had a deadly weapon and was ready to use it.

On appeal, Girtman argues that his attorney should have questioned Dr. Malak's testimony about a "trace metal test." According to Dr. Malak, this test found no traces of any metal objects (such as a knife or gun) in Jasper's hand at the time of Jasper's death. Girtman asserts that trace metal tests are unreliable, and that his attorney should have attempted to discredit the trace metal test. As the jury could have adopted Girtman's self-defense argument even if Jasper was not holding a knife at the time of his death, we find that defense counsel's failure to question the trace metal test was not prejudicial.

### E.

■ At trial Dr. Malak testified that Jasper had two gunshot wounds in the front and two in the back, and that he had been shot from "two to three feet maximum," Trial Transcript at 144. Although the magistrate judge did not discuss Jasper's gunshot wounds, Girtman claims that "for the medical examiner to describe the range of fire on a body at the time of autopsy without any concept of what was found on the clothes is not right." Brief of Appellant at 24. However, Girtman has failed to explain how the range of fire was relevant to his defense. Accordingly, we reject Girtman's suggestion that his attorney should have sought to impeach Dr. Malak's "range of fire" testimony.

### F.

■ Finally, Girtman claims that his attorney should have objected to the prosecutor's closing statement. In his closing argument, the prosecutor stated that the key

issue was self-defense, and that "they [the defense] got to prove that," Trial Transcript at 261. As the prosecutor admittedly misstated the burden of proof, *see* Brief for Appellee at 5 n. 1, Girtman argues that his attorney's failure to object to this statement was ineffective assistance of counsel. The magistrate judge rejected Girtman's claim, for two reasons. First, it has been held that under certain circumstances, a defense attorney's failure to object to a prosecutor's inappropriate remarks may constitute "trial strategy" rather than ineffective assistance. *See Hayes v. Lockhart,* 852 F.2d 339, 346 (8th Cir.1988), (rejecting ineffective assistance claim where prosecutor made inflammatory remarks at the closing statement), *vacated on other grounds,* 491 U.S. 902, 109 S.Ct. 3181, 105 L.Ed.2d 691 (1989) (*Hayes*). Second, the prosecution's misstatement was cured by the trial court's jury instructions (which stated that attorneys' remarks were not evidence, and that the defendant was required to establish only a "reasonable doubt" in the jury's mind, rather than proving self-defense).

On appeal, Girtman makes three arguments. First, Girtman cites the case of *Dietz v. Solem,* 640 F.2d 126 (8th Cir.1981) (*Dietz*), which held that if a defense attorney fails to object to a jury instruction erroneously shifting the burden of proof to the defendant, the defendant has been prejudiced by counsel's error. Girtman claims that *Dietz* is on point because a misstatement of the law by the prosecutor is just as prejudicial as a misstatement by the judge. Second, Girtman claims that the trial judge's jury instructions did not cure the prosecutor's misstatement, because the jury instructions (1) preceded the misstatement, and (2) did not specifically address the attorneys' statements about the law (as opposed to their descriptions of the facts). Third, Girtman claims that even if his defense attorney decided it was good strategy not to object during the prosecutor's closing argument, he was obliged to correct that misstatement in his own summation.

We reject Girtman's arguments, for two reasons. First, we have held that even if the prosecutor misstates the law, such an error is harmless where, as here, "[t]he

trial court properly instructed the jury to consider only the evidence, and further advised that statements and arguments of counsel are not evidence." *United States v. Yancy,* 688 F.2d 70, 72 (8th Cir.1982) (denying motion for a new trial where prosecutor incorrectly stated that "when you flee from the scene of a crime, that can be used against you."). Admittedly, in *Yancy,* unlike this case, it was not clear whether the curative jury instructions preceded or followed the prosecutor's misstatements. As the jury was presumably capable of remembering the instructions, we believe that the timing of the instructions is simply irrelevant to their curative effect. Second, even in the absence of curative instructions, we believe that the prosecutor's misstatements were not "so offensive as to deprive the defendant of a fair trial." *Id.* (citations omitted). *See also Blankenship v. Morris,* 923 F.2d 854, 1991 WL 7091 [text available], 1991 U.S.App. LEXIS 1277 (6th Cir.1991) (table) (holding that even though prosecutor "misstated the law and attempted to shift the burden of proof by remarks made during closing argument," misstatement did not violate defendant's right to "a fundamentally fair trial"). Accordingly, we hold that the defense attorney's failure to object to the prosecutor's misstatement was not ineffective assistance.

### G.

[7] Finally, Girtman argues that even if none of his attorney's errors were sufficiently prejudicial to require habeas relief, the cumulative impact of these errors requires us to find ineffective assistance of counsel. In support of this rule, Girtman relied on *Harris v. Housewright,* 697 F.2d 202 (8th Cir.1982) (*Harris*), which held that although "counsel are presumed to have rendered effective assistance." *id.* at 206, this presumption may be overcome where "[n]o single error made by the petitioner's appointed counsel is of constitutional dimension.... [if] when viewed cumulatively, the multiple errors revealed in the record ... demonstrate that counsel's total performance was" inadequate. *Id.*

The magistrate judge rejected Girtman's "cumulative error" claim, holding that *Harris* had been overruled by *Fink v. Lockhart*, 823 F.2d 204 (8th Cir.1987) (*Fink*). In *Fink*, a habeas petitioner admitted that none of his attorney's errors alone constituted ineffective assistance, but asserted "that cumulatively they amount to ineffective assistance." *Id.* at 205. The petitioner additionally argued that under *Harris*, he was not required to prove prejudice resulting from his attorney's incompetence, because the *Harris* court's "burden-shifting rule" required the court to assume prejudice where an attorney's incompetence was obvious. The court disagreed, holding that *Harris* had been overruled by the Supreme Court's *Strickland* decision, which established a "professional unreasonableness plus prejudice" test for determining ineffective assistance without mentioning burden shifting. *Id.* at 205–06. The magistrate judge held that by overruling the *Harris* burden shifting test, the *Fink* court also overruled the *Harris* cumulativeness test.

On appeal, Girtman notes that *Fink* and *Strickland* did not explicitly overrule the cumulativeness test, and claims that other circuits have continued to uphold that test. *See United States v. Dwyer*, 843 F.2d 60 (1st Cir.1988); *United States v. Rivera*, 837 F.2d 906 (10th Cir.1988), *vacated on other grounds*, 900 F.2d 1462 (10th Cir. 1990).[1]

In a case involving both ineffective assistance claims and other claims, we recently held that "cumulative error does not call for habeas relief, as each habeas claim must stand or fall on its own," *Scott v. Jones*, 915 F.2d 1188, 1191 (8th Cir.1990) (citations omitted), *cert. denied*, — U.S. —, 111 S.Ct. 1626, 113 L.Ed.2d 723 (1991). Accordingly, we hold that *Harris* is no longer good law in this Circuit, and

that Girtman's "cumulativeness" claim is without merit.

In sum, we reject all of Girtman's claims challenging his conviction.

## III.

In addition to challenging his trial, Girtman also challenges his sentence as a habitual offender. Specifically, Girtman argues that (1) his defense attorney was ineffective, and (2) the habitual offender statute should not have been applied to Girtman's conduct.

### A.

■ At trial, the court held that Girtman was a habitual offender under Arkansas law, because Girtman pleaded guilty to burglary and theft of property in 1976. Although Girtman was convicted in the adult court system, he was only 16 years old at the time of his convictions, and was only 15 years old at the time of his burglary (in August 1975). Nevertheless, Girtman's defense attorney did not consider Girtman's juvenile status to be particularly relevant, and accordingly failed to challenge the validity of Girtman's juvenile convictions.[2] Girtman now argues that this decision by his defense attorney constituted ineffective assistance of counsel.

Girtman argues that his defense attorney should have objected to the use of Girtman's juvenile convictions to determine his habitual offender status, because those convictions were unconstitutionally obtained. *See Reeves v. Mabry*, 615 F.2d 489, 491 (8th Cir.1980) (where "a jury in imposing an enhanced term of imprisonment on a person convicted of being a habitual criminal considered or may have considered a constitutionally invalid prior conviction, the habitual criminal sentence that was imposed must generally be set aside"). In

---

1. Girtman also suggests that he should not be required to prove prejudice at all because "prejudice is a very subjective matter," Brief for Appellant at 43. This argument, however, is clearly foreclosed by *Fink* and *Strickland*. *See Strickland v. Washington*, 466 U.S. 668, 692, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674 (1984); *Fink v. Lockhart*, 823 F.2d 204, 205–06 (8th Cir.1987).

2. However, the defense attorney did unsuccessfully object on other grounds. *See Girtman v. Lockhart*, Case No. PB–C–86–361, slip op. at 11–12 (E.D.Ark. Nov. 11, 1988) (magistrate's recommendations).

support of this conclusion, Girtman contends that he was not given due process before being convicted as an adult, because the 1976 trial court was not aware of his juvenile status, did not hold a hearing to determine whether Girtman should have been tried as a juvenile, and exercised unlimited discretion.

Girtman's argument rests on the assumption that at the time of his convictions, judges had absolute discretion under Arkansas law to try juvenile offenders either in adult courts (*i.e.*, circuit or municipal court) or in juvenile court. The magistrate judge rejected this assumption, based on Ark.Stat.Ann. § 41–112 (1964) (repealed 1976), which provided that "[a]n infant under twelve (12) years of age shall not be found guilty of any crime or misdemeanor," thus implying (according to the magistrate judge) that persons over 12 years old should be charged as adults. Section 41–112 was effective at the time of Girtman's burglary, although it was repealed before he was convicted. The magistrate accordingly found that the record "did not demonstrate that the trial judge exercised his discretion in treating the petitioner as an adult." Recommendations at 14.

We disagree. Assuming arguendo that the law at the time of Girtman's burglary (rather than the law in effect at the time of his conviction) is applicable, Arkansas law gave judges discretion to transfer juvenile offenders to juvenile court. Section 41–112 undoubtedly bars offenders under 12 from being convicted in adult courts, but is silent as to offenders between 12 and 18. Moreover, Ark.Stat.Ann. § 45–420 (amended 1981), effective July 1, 1975, provides that when a juvenile is charged with a crime, "the judge of the court may, in his discretion, transfer the case to any other court having jurisdiction over the matter, either as a criminal offense or as an act of delinquency." Based on this statute, the state admits (and we hold) that the 1976 judge in fact had discretion to transfer Girtman's cases to juvenile court. *See* Brief for Appellee at 7.

Thus, the question presented is whether, if the trial judge has the discretion to treat a juvenile as an adult, the judge may constitutionally exercise such discretion without a hearing, statutory guidelines, or any other restraint. The case of *Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966) (*Kent*) is highly relevant. In *Kent*, a juvenile defendant was arrested and brought before a juvenile court. Without holding a hearing, the juvenile court judge issued an order waiving jurisdiction over the defendant and ordering that he be held for trial in United States District Court. State law set forth "no specific standards for the exercise of this important discretionary act, but leaves the formulation of such criteria to the Judge." *Id.* at 566, 86 S.Ct. at 1059.

The defendant was convicted in district court. The Supreme Court reversed, holding that "it is incumbent upon the Juvenile Court to accompany its waiver order with a statement of the reasons motivating the waiver" and that "an opportunity for a hearing ... must be given the child prior to entry of a waiver order." *Id.* at 561, 86 S.Ct. at 1057. *Kent* has been interpreted to require that "[i]n the context of juvenile certification procedures, due process requires the right to counsel, to adequate notice and to a statement of reasons at a hearing to determine whether a juvenile is to be tried as an adult." *People of Territory of Guam v. Kingsbury*, 649 F.2d 740, 743 (9th Cir.1981) (*Kingsbury*) (citations omitted), *cert. denied*, 454 U.S. 895, 102 S.Ct. 392, 70 L.Ed.2d 210 (1981). Thus, *Kent* and *Kingsbury* stand for the proposition that a juvenile may not be transferred to an adult court without a hearing or other protections from judicial arbitrariness.

If transferring an offender to adult court without a hearing or a statement of reasons violates due process, it logically follows that keeping a juvenile offender in adult court without holding a transfer hearing or making oral or written findings also violates due process. Accordingly, we hold that the 1976 court's failure to hold a hearing or make findings as to whether Girtman should have been transferred to juvenile court may have violated due process, and that defense counsel's failure to raise

this issue may have constituted ineffective assistance of counsel. We therefore reverse the district court's denial of habeas relief as to Girtman's habitual offender sentence, and remand to the district court so that it may consider whether Girtman's 1976 convictions satisfied the requirements of *Kent.* If such convictions were in fact invalid, the district court should grant habeas relief as to Girtman's habitual offender sentence. We accordingly decline to reach Girtman's arguments that (1) his defense attorney should have argued that his youth at the time of his 1976 convictions were a mitigating factor, (2) his waiver of his constitutional rights at the 1976 guilty plea hearing was not knowing and voluntary, and (3) his habitual offender sentence itself was unconstitutional for other reasons.

## B.

In sum, we affirm the district court's denial of habeas relief as to Girtman's conviction, but reverse and remand as to Girtman's habitual offender sentence and remand for proceedings consistent with this opinion.